**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | | |
|---|---|---|
| VESSEL STATISTICS, INC., | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-09-1685 |
| | § | |
| ALBERT GARAUDY & ASSOCIATES, INC., | § | |
| *n/k/a HFG ENGINEERING, et al.,* | § | |
| | § | |
| Defendants. | § | |

**MEMORANDUM AND ORDER**

This dispute arises out of an agreement to inspect a tower at a gas plant.  Vessel Statistics,

Inc. sued Albert Garaudy & Associates, Inc. n/k/a HFG Engineering US, Inc. ("HFG"), Michael

Baker Jr. Inc. ("Baker"), and Baker/MO Services, Inc. ("Baker/MO") seeking damages for breach

of contract and under a *quantum meruit* claim.  (Docket Entry No. 1).  HFG moved for summary

judgment, seeking dismissal of the claims against it and sanctions under Rule 11.  (Docket Entry No.

17).  Baker and Baker/MO responded, (Docket Entry No. 24), Vessel Statistics joined the response,

(Docket Entry No. 25), and HFG replied, (Docket Entry No. 26).

Based on the record; the motion, response, and reply; and the relevant law, this court grants

HFG's motion for summary judgment and denies its request for sanctions.  By March 18, 2011, the

remaining parties must inform the court what issues remain to be resolved and propose a schedule

for resolving them.  The reasons for this ruling are explained below.

**I.     Background**

This dispute arises out of work performed in April 2007 at a gas plant in Atmore, Alabama.

Baker Energy manages the plant's operations under a contract with the plant owner, Escambria

Operating Company.  Baker Energy is a unit of Baker/MO.  HFG is an engineering consulting company.

In 2006, Baker Energy hired HFG to manage a "turnaround" project at the plant.  (Docket Entry No. 17, Ex. 1, ¶ 3).  HFG's duties included soliciting proposals to perform work on the project.  (*Id.*, ¶ 4).  The companies who successfully bid to perform work on the project contracted directly with Baker Energy and were not subcontractors of HFG.  (*Id.*, ¶ 5–6).  HFG had no contracts with the vendors on the project.  The record reflects that this arrangement is common in the industry.  (*Id.*).

The turnaround project required inspecting pressure vessels at the plant.  HFG solicited proposals from HFG and others to conduct the inspection.  On January 12, 2007, Bert Vasbinder, who was then the HFG project manager for the turnaround project, sent an e-mail to Dwight Savoie, the Vessel Statistics operations manager, soliciting a bid for the project.  The e-mail read:

> Dwight:
>
> Attached are the plan and the vessel information.  Please provide me with a date ASAP that you or an associate can make it to the facility to determine any requirements in order to provide a cost to do the inspections.  Let me know that you received this information.
>
> Thanks!

(Docket Entry No. 24, Ex. 5-1).

Vessel Statistics submitted a bid to Vasbinder at HFG on February 6, 2007.  (Docket Entry No. 17, Ex. 1-B).  The total estimated cost was $55,250, which included $49,750 for the inspection and $5,500 to prepare the report.  (*Id.*).

On February 22, Baker/MO's contracts administrator, Patricia Wilkinson, sent a letter to Vessel Statistics that read in relevant part as follows:

> **Baker/MO Services, Inc.** (Baker Energy, a unit of Michael Baker Corporation) would like to enter into an agreement with your company to perform certain services on an as-needed basis. Enclosed are two copies of our Master Service Agreement (MSA) with various exhibits that will be used to cover these services.
> . . .
> Review this MSA package; sign both copies of the Agreement and the Exhibits where appropriate. Return both copies to the undersigned *within 14 days of receipt.*

(*Id.*, Ex. 5 (emphasis in original)). The letter was on Baker Energy letterhead and listed Baker Energy's Houston address as the return address. (*Id.*). The letter did not mention HFG.

Vasbinder forwarded the purchase order number for the Baker Energy project to the president of Vessel Statistics, F. Roger Duvic III, on February 22. Vasbinder's transmittal stated, "Below is the P.O. number for the vessel inspections at the BEC plant." The transmittal included an e-mail from Larry Adkisson at Baker Energy stating: "Vessel Statistics PO is 132405." Adkisson's e-mail address ended "@mbakercorp.com." (*Id.*, Ex. 1-H).

On March 8, 2007, Duvic signed the Master Service Agreement attached to the February 22 letter from Wilkinson at Baker/MO. No representative from Baker/MO signed the Agreement. (*Id.*, Ex. 6). The Agreement clearly lists "Baker/MO Services, Inc." as the counterparty and does not mention HFG. (*Id.*).

Leading up to the project, Duvic, the Vessel Statistics president, e-mailed several letters to HFG's Vasbinder about the turnaround project. Each letter bore a subject line referring to "Baker Energy, Atmore Alabama Facility."

The first letters discussed the need to rent a crane. In a March 28 letter to Vasbinder, Duvic stated that renting the crane would cost $6,000, increasing the inspection cost to "approximately $53,000." (*Id.*, Ex. 1-C). "I am not sure what Baker Energy is expecting," Duvic wrote, "but this

3

is my best estimate at this time." (*Id.*).  The next day, Duvic wrote to Vasbinder:

> I spoke to Johnny McQueen at Glen Machine Works.  Their crane is adequate for the inspection; however, they do not have a certified man-basket that would fit inside this stack.  We can supply the certified man-basket with test weight for $5,600.  Please advise at your earliest opportunity if you would like for us to supply one for this inspection.

(*Id.*, Ex. 1-D).

On April 6, Duvic wrote to Vasbinder to inform him that Vessel Statistics planned to use Matrix Inspection & Engineering, Inc. for the inspection, at a cost of $40,000.  (*Id.*, Ex. 1-E).  Four days later, Duvic wrote Vasbinder stating that Matrix Inspection's cost would be higher and promising to relay the new cost as soon as possible.  (*Id.*, Ex. 1-F).  E-mails between Vasbinder and Baker/MO employees show that Vasbinder discussed the cost of cranes with Baker/MO, though it does not appear that Duvic or anyone else at Vessel Statistics was aware of these e-mails.  (*Id.*, Ex. 1-G).

A May 23, 2007 invoice for $114,769.42 from Vessel Statistics bearing the purchase number, 132405, lists "Baker Energy" as the purchaser.  (*Id.*, Ex. 9).  The record shows that this invoice was sent to Vasbinder at HFG by Duvic at Vessel Statistics.  In the suit, Vessel Statistics claims it never received payment for the invoice.  This invoice is not among those listed as invoices sent to HFG in Baker's response to HFG's interrogatories. (Docket Entry No. 17-2 at 9).

Vessel Statistics sued Baker, Baker/MO, and HFG on June 26, 2009.  (Docket Entry No. 1).  HFG now moves for summary judgment dismissing the breach of contract and *quantum meruit* claims against it.  HFG also asks this court to sanction Vessel Statistics under Rule 11 by requiring it to pay the attorney's fees and costs HFG incurred in this litigation.

## II.    The Motion for Summary Judgment

4

A.      **The Legal Standard**

Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a).  "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).  If the burden of proof at trial lies with the nonmoving party, the movant may satisfy its initial burden by "'showing' — that is, pointing out to the district court — that there is an absence of evidence to support the nonmoving party's case." *See Celotex*, 477 U.S. at 325.  While the party moving for summary judgment must demonstrate the absence of a genuine issue of material fact, it does not need to negate the elements of the nonmovant's case. *Boudreaux v. Swift Transp. Co.*, 402 F.3d 536, 540 (5th Cir. 2005) (citation omitted).  "A fact is 'material' if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotation omitted).  "If the moving party fails to meet [its] initial burden, the motion [for summary judgment] must be denied, regardless of the nonmovant's response." *United States v. $92,203.00 in U.S. Currency*, 537 F.3d 504, 507 (5th Cir. 2008) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc)).

When the moving party has met its Rule 56(a) burden, the nonmoving party cannot survive a summary judgment motion by resting on the mere allegations of its pleadings.  The nonmovant must identify specific evidence in the record and articulate how that evidence supports that party's claim. *Baranowski v. Hart*, 486 F.3d 112, 119 (5th Cir. 2007).  "This burden will not be satisfied by 'some metaphysical doubt as to the material facts, by conclusory allegations, by unsubstantiated

assertions, or by only a scintilla of evidence.'" *Boudreaux*, 402 F.3d at 540 (quoting *Little*, 37 F.3d at 1075). In deciding a summary judgment motion, the court draws all reasonable inferences in the light most favorable to the nonmoving party. *Connors v. Graves*, 538 F.3d 373, 376 (5th Cir. 2008).

### B.     Analysis

#### 1.     Breach of Contract

The parties agree that Texas law applies. Under Texas law, "'[t]he essential elements of a breach of contract action are: (1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages sustained by the plaintiff as a result of the breach.'" *Am. Gen. Life Ins. Co. v. Kirsh*, 378 F. App'x 379, 383 (5th Cir. May 11, 2010) (citing *Smith Int'l, Inc. v. Eagle Grp. LLC*, 490 F.3d 380, 387 (5th Cir. 2007)).

HFG contends that Vessel Statistics contracted with Baker/MO and that Vessel Statistics knew this from the outset. Vessel Statistics responds that HFG is nonetheless liable because HFG never revealed that it was acting as Baker/MO's agent. Although an agent is generally not liable on the contracts of its principal, an exception exists when the agent fails to disclose that it is acting on behalf of a principal and the circumstances do not put the contracting party on inquiry notice. *Avenell v. Chrisman Props., L.L.C.*, No. 14-08-01180-CV, 2010 WL 1379972, at *3 (Tex. App.—Houston [14th Dist.] Apr. 8, 2010, ); *Virani v. Cunningham*, No. 14-08-01166-CV, 2009 WL 2568349, at *2 (Tex. App.—Houston [14th Dist.] Aug. 20, 2009, pet. denied); *J. Parra e Hijos, S.A. de C.V. v. Barroso*, 960 S.W.2d 161, 168 (Tex. App.—Corpus Christi 1997, no pet.); *Gonzales Cnty. Water Supply Corp. v. Jarzombek*, 918 S.W.2d 57, 60 (Tex. App.—Corpus Christi 1996, no writ); *A to Z Rental Ctr. v. Burris*, 714 S.W.2d 433, 435 (Tex. App.—Austin 1986, writ ref'd n.r.e.).

6

An agent is not liable for the contract of its principal if the contracting party knows both that the agent is acting on behalf of a principal and the identity of that principal. *Barroso*, 960 S.W.2d at 168; *Dodds v. Charles Jourdan Boutique, Inc.*, 648 S.W.2d 763, 766 (Tex. App.—Corpus Christi 1983, no writ); *Trailways, Inc. v. Clark*, 794 S.W.2d 479, 491 (Tex. App.—Corpus Christi 1990, writ denied). The contracting party has no duty to discover the existence or identity of an undisclosed principal. *Burch v. D.L. Hancock*, 56 S.W.3d 257, 261 (Tex. App.—Tyler 2001, no pet.) (citing *A to Z Rental Ctr.*, 714 S.W.2d at 435). The disclosure requirement is met if the other contracting party has "reasonable grounds to know of the principal's existence or identity, irrespective of the source from which the other party obtains it." *Id.*

The record discloses no fact issue material to determining whether Vessel Statistics had reasonable grounds to know that HFG was acting on behalf of a principal and that the principal was Baker/MO. HFG's communications to Vessel Statistics that HFG was soliciting the bid as one part of a project at the Baker Energy plant. Although HFG was Vessel Statistics' primary contact before and after Vessel Statistics was selected to perform the inspection work, the communications make it clear that the Baker/MO, not HFG, accepted the Vessel Statistics bid. The bid acceptance was on Baker letterhead and stated, "**Baker/MO Services, Inc.** (Baker Energy, a unit of Michael Baker Corporation) would like to enter into an agreement with your company to perform certain services on an as-needed basis." (Docket Entry No. 17, Ex. 5 (emphasis in original)). Duvic, the Vessel Statistics president, signed the Master Service Agreement. That Agreement clearly identifies "Baker/MO Services, Inc." as the counterparty. Vessel Statistics has not disputed that it received these communications. There is no genuine issue of material fact; the undisputed evidence shows that Vessel Statistics contracted with HFG's disclosed principal. The summary judgment motion

on the breach of contract claim is granted.

### 2.   *Quantum Meruit*

HFG contends that the *quantum meruit* claim should be dismissed because Vessel Statistics provided no services to HFG.   Vessel Statistics does not respond to this argument.   "The key to the plaintiff's right to recover in [*quantum meruit*] is the *defendant's* acceptance, use, and enjoyment of the benefits conferred by the plaintiff."   *Chilton Ins. Co. v. Pate & Pate Enters.*, 930 S.W.2d 877, 889 (Tex. App.—San Antonio 1996, writ denied) (emphasis added) (citing *Truly v. Austin*, 744 S.W.2d 934, 937 (Tex. 1988)).   HFG is entitled to summary judgment dismissed the *quantum meruit* claim.

## III.   The Motion for Rule 11 Sanctions

HFG asks this court to require Vessel Statistics to pay HFG's reasonable attorney's fees and costs incurred in this litigation as a sanction under Rule 11.   HFG contends that the only purpose Vessel Statistics had in suing was to increase the pool of parties potentially willing to pay for a settlement.

Rule 11 "prohibits filings made with 'any improper purpose,' the offering of 'frivolous' arguments, and the assertion of factual allegations without 'evidentiary support' or the 'likely' prospect of such support."   *Young v. City of Providence ex rel. Napolitano*, 404 F.3d 33, 39 (1st Cir. 2005).   The rule requires that a motion for sanctions "be made separately from any other motion" and be served on the opposing party 21 days before it is filed with the court.   FED. R. CIV. P. 11(c)(2).   HFG's motion is incorporated into its motion for summary judgment and there is no indication in the motion that HFG served it on Vessel Statistics 21 days before filing.

HFG asks this court to require payment of HFG's attorney's fees and expenses on own

initiative under Rule 11(c)(3).  This court cannot order Vessel Statistics to HFG's attorney's fees

without a proper motion from HFG.  Rule 11(c)(4) makes it clear that a court cannot impose

attorney's fees without a properly filed motion under Rule 11(c)(2):

> A sanction may include nonmonetary directives; an order to pay a penalty into court; or, *if imposed on motion* and warranted for effective deterrence, an order directing payment to the *movant* of part or all of the reasonable attorney's fees and other expenses directly resulting from the violation.

FED. R. CIV. P. 11(c)(4) (emphasis added).  The Committee Note to the 1993 amendments echoes

this point: "the rule authorizes the court, *if requested in a motion* and if so warranted, to award

attorney's fees to another party."  *Id.*, Committee Note (emphasis added); *see also* 5A CHARLES

ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1336.3, at 705 (3d ed.

2004) ("Rule 11 . . . limits sanctions imposed on the court's initiative to penalties payable to the

court.").

HFG is not entitled to the sanction it seeks.  The motion for sanctions is denied.

**IV.    Conclusion**

HFG's motion for summary judgment is granted.  The claims against HFG are dismissed.

The motion for sanctions is denied.  The remaining parties must inform the court by March 18, 2011

what issues remain for decision and propose a schedule for resolving them.

SIGNED on March 7, 2011, at Houston, Texas.

Lee H. Rosenthal
United States District Judge